**NOT FOR PUBLICATION**

**FILED**

MAY 15 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KEVIN WALKER, | No. 22-55450 |
| Plaintiff-Appellant, | D.C. No. 2:21-cv-00916-MCS-SK |
| v. | |
| AT&T BENEFIT PLAN NO. 3; AT&T SERVICES, INC., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Mark C. Scarsi, District Judge, Presiding

Submitted May 11, 2023**
San Francisco, California

Before: MURGUIA, Chief Judge, and FRIEDLAND and BENNETT, Circuit
Judges.

In this Employee Retirement Income Security Act of 1974 ("ERISA")

disability insurance case, Defendants-Appellees—AT&T Umbrella Benefit Plan

No. 3 and AT&T Services, Inc. (collectively "AT&T")—denied Plaintiff-

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

Appellant Kevin Walker long-term disability ("LTD") benefits. Walker was a participant in the self-funded AT&T West Disability Benefits Program, which is a component of AT&T's disability insurance plan (the "Plan"). After Sedgwick Claims Management Services, Inc., the third-party administrator of the Plan, denied Walker LTD benefits and denied Walker's administrative appeal, Walker sued AT&T in federal court. AT&T moved for summary judgment and Walker moved for judgment following a bench trial. The district court ruled in AT&T's favor, concluding that Walker was not entitled to LTD benefits. Walker appealed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. As a participant of the Plan, Walker was eligible for LTD benefits if the claims administrator determined that he was totally disabled, starting on the first day immediately following fifty-two weeks of short-term disability benefits. Under the Plan, a participant is eligible to receive LTD benefits if they have a "sickness, injury or other medical, psychiatric or psychological condition that prevents [them] from engaging in any occupation or employment for which [they] are qualified or may reasonably become qualified, based on training, education or experience." A participant is "totally disabled" if they are "incapable of performing the requirements of an occupation or employment other than an occupation or employment with a base rate of pay that is less than 50 percent of [their] Pay at the time [they] became entitled to Long-Term Disability Benefits."

To demonstrate that he was entitled to LTD benefits, Walker was required to submit "[o]bjective medical information sufficient to show that [he] is Disabled."

2.      "In an appeal under ERISA, we review de novo a district court's grant of summary judgment, employing the same standard that governed the district court's review of the plan administrator's decision." *Wolf v. Life Ins. Co. of N. Am.*, 46 F.4th 979, 984 (9th Cir. 2022). Normally, a court only reviews denials of claims for abuse of discretion, where its "review is limited to the record before the plan administrator . . . ." *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1110 (9th Cir. 2003). Minor ERISA procedural violations typically do not alter this standard of review, but when a plan "administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA," a court reviews "de novo the administrator's decision to deny benefits." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 971 (9th Cir. 2006) (en banc).

Walker argues that Sedgwick denied him a full and fair review by violating several procedural requirements and by not considering all of Walker's evidence. The district court agreed with Walker that Sedgwick had made three procedural errors. *See Walker v. AT&T Benefit Plan No. 3*, 2022 WL 1434668, at *4–6 (C.D. Cal. Apr. 6, 2022). For instance, the district court concluded that Sedgwick violated 29 C.F.R. § 2560.503-1(g)(1)(iii) because, before denying Walker's

3

appeal, Sedgwick failed to inform him that it needed his entire Social Security Disability Insurance ("SSDI") file. *Id.* at \*5.

Although failing to consider the SSDI file is serious and could have "prevented the administrative record from being fully developed or prevented . . . a court from knowing all relevant facts," *O'Rourke v. N. Cal. Elec. Workers Pension Plan*, 934 F.3d 993, 1000 (9th Cir. 2019), the district court ultimately did consider all the relevant facts, *see Walker*, 2022 WL 1434668, at \*7–9. The district court, "f[inding] all proposed new facts in [Walker's] favor," and "conduct[ing] a de novo review," still concluded that "[n]one of this [additional] evidence materially disputes the evidence in the administrative record." *Id.* at \*7–8. And on appeal, even assuming that Sedgwick's procedural errors warrant de novo review, Walker cannot show that plan administrators erred and that he is entitled to LTD benefits.

To start, Walker concedes that "[t]here is a general consensus about [his] medical conditions and physical limitations" restricting him from "lifting, pushing, or pulling greater than 20 lbs. and . . . frequent bending or stooping."[1] Despite this consensus, Walker argues that he is totally "disabled by chronic pain." Walker

---

[1] Walker only takes issue with Dr. Vlachos' report, contending that it is "internally contradictory and demonstrably untrue in material respects." However, the district court "[d]iscount[ed] this report" and viewed "the rest of the evidence in the light most favorable to [Walker]," and it still concluded that "the undisputed evidence indicates that [Walker] could work a sedentary job where he did not have to lift more than 20 pounds." *Walker*, 2022 WL 1434668, at \*6.

4

contends that the record includes "objective findings of observable medical conditions that are known to cause pain." However, no doctor came to this conclusion, including his own treating doctors. Accordingly, the record shows that Walker could work with some restrictions.

Next, Walker contends that he cannot perform "any occupation" listed in the transferable skills assessments ("TSAs"). Sedgwick's termination letter cited eight alternative occupations that Walker could perform, Sedgwick's appeal denial letter cited nine occupations that Walker could perform, and Sedgwick's final TSA lists two such jobs. Although the TSAs do vary without adequate explanation, the final TSA lists two sedentary jobs that provide at least 50% of Walker's prior pay that he could perform given his physical limitations: Repair Order Clerk and Utility Clerk Locator. Sedgwick concluded that it was "able to confirm [the] existence of one of the two alternate occupation[s] identified" in the final TSA. Walker does not dispute that he can physically perform these jobs; instead, he argues that the TSAs "did not consider evidence that Walker's training and experience in [Information Technology] is obsolete."

The Plan, however, only requires that Walker be "qualified or may reasonably become qualified based on training, education, or experience" for "any occupation." Walker admits that he could become qualified with some additional training: he states that "he would require at least one month of additional training

5

to become qualified to perform the job of Repair Order Clerk, and at least 6 months an[d] up to a year of additional training to become qualified to perform the occupation of Utility Clerk." Accordingly, the record supports the conclusion that there exists at least one occupation that Walker could become qualified to perform given his physical work restrictions. *See Pannebecker v. Liberty Life Assurance Co. of Bos.*, 542 F.3d 1213, 1219 (9th Cir. 2008) (reiterating that the "language of the 'any occupation' standard is not demanding" (quoting *McKenzie v. Gen. Tel. Co. of Cal.*, 41 F.3d 1310, 1317 (9th Cir. 1994)).[2]

In addition, Walker argues that his SSDI award is evidence supporting his disability. "Social Security disability awards do not bind plan administrators, but they are evidence of disability." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 679 (9th Cir. 2011) (footnote omitted). First, the SSDI file corroborates the medical consensus that Walker was generally limited to occasionally lifting or carrying twenty pounds and frequently lifting or carrying ten pounds. Second, the SSDI award does not show that Walker could not perform any job without some reasonable training. The Plan and the Social Security Act ("SSA") have different disability requirements. For example, under the SSA, a

---

[2] Walker argues at length that requiring additional training violates the plain meaning of the Plan. However, Walker admits that the plain language of the Plan only requires that Sedgwick show that there is "any occupation or employment for which you are qualified *or may reasonably become qualified*, based on training, education or experience."

person is disabled if "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). This definition—unlike the Plan's—does not include work Walker *could* become qualified for given reasonable training, but rather only work that he is already qualified to perform.

Accordingly, the district court did not err because the court considered Walker's supplemental evidence and conducted a de novo review and properly concluded that the outcome remains the same. We therefore affirm the denial of LTD benefits. *See Wolf*, 46 F.4th at 984.

3.      Finally, Walker appeals the district court's conclusion that he lacked standing to bring an action for injunctive relief to prevent AT&T from placing an equitable lien on certain funds received as an offset to any LTD benefits that were overpaid. "For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citation omitted). That is, the "threatened injury must be *certainly impending* to constitute injury in fact" and "[a]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). Here, AT&T has not threatened to take out an equitable lien and Walker points to nothing in the record

7

to show that a lien is "certainly impending." *Id.* Walker only argues that "AT&T can at any point, and by any means" place a lien to collect on an overpayment. Walker identifies no overpayment that he ever received, and, in any event, such hypothetical future injury is insufficient. *See id.*

\* \* \*

**AFFIRMED**